# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:03-CR-00214-GCM

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WESTLEY LORENZA MCKINNEY,<br><br>Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Defendant Westley Lorenza McKinney's Motion for a Reduced Sentence (ECF No. 34). The United States filed a response agreeing to a reduction in McKinney's sentence, but opposing the extent of the relief sought by McKinney. McKinney did not file a reply. The matter is now ripe for disposition. For reasons that are discussed in more detail below, the Court will grant the motion.

## I. BACKGROUND

Westley McKinney is serving a 46-year prison sentence for drug and firearm offenses. In September 2003, officers from the Charlotte-Mecklenburg Police Department responded to a call from a hotel manager about unusual activity at one of the hotel's rooms. PSR ¶ 7. Officers entered the room and saw a large amount of cash on the bed and nightstand. *See id*. After police questioned McKinney, McKinney told the police where to find drugs in the room. Police recovered 26.7 grams of crack cocaine, less than a gram of marijuana, a .380 Beretta handgun, $4,386 in cash, and drug paraphernalia. *Id*.

A federal grand jury returned a three-count indictment against McKinney, charging him with (1) possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841; (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18

U.S.C. § 924(c); and (3) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 3 at 1–2. The United States also filed an information under 21 U.S.C. § 851, notifying the Court of the government's intent to seek enhanced penalties based on McKinney's prior convictions. ECF No. 4. McKinney pled guilty to the drug charge and to violating § 924(c) in exchange for the dismissal of the felon-in-possession count. *See* ECF No. 15 at 1; ECF No. 24 at 1.

The United States Probation Office prepared a presentence report. Given a drug quantity of 26.7 grams of crack cocaine, McKinney's base offense level for the drug offense was 28. PSR ¶ 15. But because McKinney had prior drug and firearm convictions, the probation officer classified him as a career offender, ratcheting his offense level to 37 and his criminal history category from Category V to Category VI. *Id.* ¶¶ 21, 41. And McKinney was a recidivist § 924(c) offender, which meant that he faced a mandatory minimum term of imprisonment of 25 years on that offense alone. *Id.* ¶ 69. In all, the Guidelines called for a combined sentence of 562 to 627 months. *Id.* ¶ 26. The Court imposed a low-end sentence of 562 months' imprisonment, plus a five-year term of supervised release. *See* ECF No. 24 at 2–3.

In June 2022, McKinney—through counsel—filed a motion for a reduced sentence under the First Step Act of 2018. ECF No. 34. McKinney sought a reduced sentence of 312 months under Section 404 of the First Step Act. *Id.* at 1.

## II.     DISCUSSION

McKinney's motion primarily challenges his drug conviction, which stemmed from his possession of crack cocaine. Because the history of crack cocaine sentencing is highly germane to a First Step Act motion, the Court briefly discusses it before turning to the merits of the motion.

2

Congress took a mailed-fist approach to crack cocaine in the 1980s, treating it as "far more serious" than powder cocaine. *Dorsey v. United States*, 567 U.S. 260, 266 (2012). In the Anti-Drug Abuse Act of 1986, Congress established mandatory minimum penalties for possessing quantities of drugs associated with "kingpins" and "middle-level dealers." *See* David A. Slansky, *Cocaine, Race, and Equal Protection*, 47 Stan. L. Rev. 1283, 1287 (1995). But Congress designed crack penalties without kingpins or middle-level dealers in mind: "Instead, Congress fixed the thresholds for crack simply by dividing the thresholds for powder cocaine by 100 . . . five grams, rather than 500 grams, for a five-year mandatory minimum sentence." *Id*. This infamous 100:1 crack-to-powder ratio had pernicious effects. Because 85 percent of defendants convicted of crack offenses were black, the sentencing regime produced disproportionately harsh sentences for black defendants. *See United States v. Thomas*, 32 F.4th 420, 423 (4th Cir. 2022).

In 2010, Congress reduced the penalties for crack cocaine offenses with the Fair Sentencing Act. *Id.* The changes were not wholly retroactive. *See Dorsey*, 567 U.S. at 282 (concluding that the Fair Sentencing Act applied to defendants sentenced after August 3, 2010). As a result, Congress enacted the First Step Act of 2018, which made the reduced penalties for crack cocaine retroactive and "authorized the courts to provide a remedy" for defendants convicted under certain "covered offenses." *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020). Under Section 404 of the First Step Act, sentencing courts could "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222 (citation omitted).

   a. **Legal Standard**

There are two steps when considering a motion for a reduced sentence under Section 404 of the First Step Act. First, the sentencing court must consider whether the defendant was convicted

3

of a "covered offense." As both parties agree, that showing is easily made here, because the Fourth Circuit has ruled that possession with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(B) is a "covered offense." *See United States v. Wirsing*, 94 F.3d 175, 186 (4th Cir. 2019).

The second step is to consider the propriety of relief, because sentence reductions under Section 404 are discretionary. *Id*. at 180. Although a First Step motion does not trigger a "plenary resentencing hearing," the trial judge must still perform a "robust resentencing analysis." *United States v. Collington*, 995 F.3d 347, 358 (4th Cir. 2021). In undertaking this task, the sentencing court must recalculate the Guidelines sentence, correcting any previously-made errors. *See id*. at 355. And the Court may account for intervening case law, including case law that is not retroactive. *Chambers*, 956 F.3d at 672, 674; *United States v. Lancaster*, 997 F.3d 171, 176 (4th Cir. 2021). Finally, the Court must apply the factors from § 3553(a) to determine what sentence is appropriate. *Collington*, 995 F.3d at 355. In so doing, the Court can consider post-conviction conduct and evidence of rehabilitation. *See Chambers*, 956 F.3d at 674.

The Court pauses to note that part of the Fourth Circuit's holding in *Lancaster* appears to be at odds with the Supreme Court's recent decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022).[1] *Lancaster* indicated that a sentencing court should apply intervening case law, including non-retroactive law, when recalculating the proper Guidelines sentence. *See* 997 F.3d at 175–76; *see also id*. at 176–78 (Wilkinson, J., concurring). In *Concepcion*, the Supreme Court agreed that a district court could consider non-retroactive intervening case law, but only after calculating a "benchmark" Guidelines range, calculated "as if the Fair Sentencing Act's

---

[1] Another district court in this Circuit recently observed the same. *See United States v. Thompson*, CR No. 3:04-657-JFA, 2022 WL 3566856, at *2 (D.S.C. Aug. 18, 2022).

amendments had been in place at the time of the offense." 142 S. Ct. at 2402 n.6. Accordingly, the Court adopts the analytical framework from *Concepcion*.

### b. Guidelines Calculation

The Court begins with a "benchmark" Guidelines calculation, which solely contemplates the Fair Sentencing Act's amendments.[2] Under those parameters, McKinney's offense level is 31, which is the result of his career offender status and a three-point reduction for acceptance of responsibility. *See* U.S.S.G. §§ 4B1.1(b)(2); 3E1.1. His criminal history category is VI. *See* U.S.S.G. § 4B1.1(b). The aggregate Guidelines range for McKinney's offenses is 488 to 535 months' imprisonment.

### c. Intervening Law

As *Concepcion* permits, the Court now considers intervening law, including non-retroactive law, in considering what an appropriate sentence should be. *See* 142 S. Ct. at 2402 n.6. The greatest intervening change relates to McKinney's career offender status, which increased both his offense level and his criminal history for purposes of the Guidelines range. PSR ¶¶ 21, 41. A defendant is a career offender if (1) he was 18 or older at the time of the offense of conviction; (2) the offense of conviction was a crime of violence or a controlled substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a). McKinney correctly argues that he would not be classified as a career offender if sentenced today.[3]

---

[2] The Court concurs with the United States Probation Office's Guidelines calculation. *See* ECF No. 36 (supplemental PSR).
[3] The government appears to concede the point, identifying a Guidelines range that does not contemplate career offender status. *See* ECF No. 38 at 5.

5

At his 2005 sentencing, McKinney had three predicate convictions: (1) possessing cocaine with intent to sell and deliver; (2) trafficking in cocaine; and (3) possessing a firearm during and in relation to a drug trafficking crime. PSR ¶ 25. But the first two offenses no longer qualify as predicate offenses. First, the Fourth Circuit's decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc) means that McKinney's state conviction for possession with intent to sell and deliver no longer qualifies as a predicate offense. In *Simmons*, the Fourth Circuit drastically changed the way that courts determine whether prior state convictions qualify as "felonies," which are defined as offenses "punishable by . . . imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2 cmt. 1. Because North Carolina employs strictly structured sentencing, "a prior conviction under North Carolina law is punishable by more than one year of imprisonment only if the defendant's conviction, based on his individual offense characteristics and criminal history, allowed for such a sentence." *Miller v. United States*, 735 F.3d 141, 144 (4th Cir. 2013) (describing the holding in *Simmons*).

McKinney's state charge for possession with intent to sell and deliver was a Class H felony, and his record level at the time was II. *See* ECF No. 34-2 at 1 (state criminal judgment). Under the North Carolina sentencing guidelines, McKinney's presumptive minimum term of imprisonment of six to eight months, and his maximum term was 10 months. *See* N.C. Gen. Stat. §15A-1340.17 (2003). As a result, McKinney's conviction for possessing with intent to sell and deliver was not a "felony" contemplated by U.S.S.G. § 4B1.2, and it could not serve as a career offender predicate offense.

At McKinney's sentencing in 2005, the Court concluded that McKinney's state conviction for trafficking in cocaine was a "controlled substance offense" that served as a valid predicate for

career offender status. In fact, that offense is not a valid predicate because it does not meet the definition of a controlled substance, which "means an offense . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . **with intent to manufacture, import, export, distribute, or dispense**." U.S.S.G. § 4B1.2(b) (emphasis added). In *United States v. Brandon*, the Fourth Circuit analyzed the North Carolina trafficking statute under the categorical approach, reasoning that "it cannot fairly be said that an intent to distribute is inherent in all violations of N.C. Gen. Stat. § 90-95(h)."[4] 247 F.3d 186, 195 (4th Cir. 2001). Because trafficking was not a valid predicate, McKinney would not be sentenced as a career offender today. *See* U.S.S.G. § 4B1.1(a) (requiring two predicate offenses).

Taken together, McKinney's changed career offender status and changes to crack cocaine penalties dramatically lower the correspondent offense level. Under the present Guidelines, a drug weight of 26.7 grams of cocaine base produces a base offense level of 22. *See* PSR ¶ 8; U.S.S.G. § 2D1.1. With a three-level reduction for acceptance of responsibility, McKinney's offense level on the drug offense becomes 19. *See* U.S.S.G. § 3E1.1.

Changes to intervening law have also affected McKinney's criminal history computation. McKinney had nine criminal history points for his prior convictions. PSR ¶ 39. At his 2005 sentencing, he received an additional two points for committing his offenses of conviction less than two years after being released from custody. *Id.* ¶ 40. The Sentencing Commission later eliminated the recency provision in 2010 via Guidelines Amendment 742. Although Amendment 742 was not retroactive, the Court agrees with McKinney that he should receive its benefit. *See*

---

[4] Although *Brandon* involved the Armed Career Criminal Act, it analyzed a similar intent requirement in the statutory definition of a "serious drug offense," which was defined in part as "an offense under State law, involving manufacturing, distributing, or possessing **with intent to manufacture or distribute** . . . ." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).

7

U.S.S.G. § 1B1.10(d); *Concepcion*, 142 S. Ct. at 2403 (approving consideration of nonretroactive Guidelines amendments in First Step Act motions). As a result, McKinney has nine criminal history points, yielding a criminal history category of IV.

Based on the foregoing changes, the Guidelines sentence for McKinney's drug offense would be 46–57 months. McKinney's §924(c) sentence has not changed: The mandatory minimum penalty remains 300 months. *See* 18 U.S.C. § 924(c)(1)(C)(i). When considering the appropriate sentence for McKinney, the Court observes that his aggregate range under the present Guidelines would be 346–357 months.

### d. Variance

McKinney nevertheless urges the Court to employ a variance and impose a below-Guidelines sentence of 312 months. Courts considering First Step Act motions can depart downwards from recalculated Guidelines ranges, or vary from them. *See Collington*, 995 F.3d at 355; *Chambers*, 956 F.3d at 674 ("[W]e also agree that the court may vary from the Guidelines . . . ."). McKinney raises two main arguments in favor of a variance: (1) the need to remediate extant crack / powder cocaine sentencing disparities; and (2) his post-sentencing rehabilitation.

First, McKinney argues that the Fair Sentencing Act of 2010 continues to perpetuate sentencing disparities between crack and powder cocaine, punishing crack cocaine at nearly an 18:1 ratio. McKinney urges the Court to treat them equally, pointing out that the Department of Justice has taken that position on pending legislation that would retroactively make the ratio 1:1. In a written statement for the Senate Judiciary Committee, the Department deplored the "crack/powder sentencing disparity," noting that it was "based on misinformation about the pharmacology of cocaine and its effects," and urging the passage of retroactive legislation to correct the disparity. *See* ECF No. 34-4 at 1 & 8. McKinney argues that if crack were punishable

like powder cocaine, his base offense level on the § 841 count would be 12, yielding a total offense level of 9 after a reduction for acceptance of responsibility. Given his criminal history category of IV, plus the mandatory minimum sentence for his § 924(c) conviction, that would result in an aggregate sentence of 312 to 318 months.

McKinney's point—which stresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), is well taken. But the Court hesitates to afford preclusive effects to a statement made in support of *proposed* legislation. And in any event, the Court is far more persuaded by McKinney's second argument for a variance: post-sentencing rehabilitation.

In his decades of incarceration on the present offenses of conviction, McKinney has not incurred a single disciplinary infraction.[5] ECF No. 34-1. He has completed dozens of work and educational programs, including the completion of a GED. *Id.; see also* ECF No. 34-6; ECF No. 34-7. McKinney has been lauded by prison staff for serving as an example to other inmates. ECF No. 34-8 (commendatory memoranda). He serves as a drug abuse program mentor and a suicide watch companion, volunteers in the chapel, and participates in a college program through FCI Hazelton and West Virginia University. *See id*.

The government consents to a sentence reduction to 357 months,[6] acknowledging that "McKinney has performed well in prison, and . . . the sentencing considerations described in 18 U.S.C. § 3553(a) weigh in favor of a reduction." ECF No. 38 at 5. But the government urges the

---

[5] McKinney had four disciplinary infractions during other sentences. His Bureau of Prisons record indicates that he had "maintained clear conduct since 1994." ECF No. 34-6 at 2.
[6] This number represents the government's calculation of a low-end Guidelines sentence which accounts for changed career offender status, but does not incorporate the retroactive application of Amendment 742.

9

Court not to reduce the sentence any further, pointing to McKinney's multiple drug-related convictions. *Id*. at 5–6.

The Court now considers the relevant § 3553(a) factors. First, the nature and circumstances of the offense were undoubtedly serious. McKinney carried a firearm while dealing crack cocaine, an addictive and dangerous drug. And McKinney was a recidivist offender, having previously committed drug and firearm offenses. At the same time, however, McKinney's crimes were essentially nonviolent: there is no evidence in the record to suggest that McKinney ever used the .380 pistol that was found in his hotel room.

McKinney's history and characteristics present mixed evidence. At the time of his sentencing in 2005, McKinney was 41 years old, and he had a lengthy record of narcotics and firearm offenses. That would tend to suggest that his criminal history was not the one-off product of youthful immaturity. Rather, the record indicates that McKinney's criminal history was linked to his drug addiction: McKinney reported using crack for ten years and smoking it on a regular basis before his 2003 arrest. *See* PSR ¶ 59.

But McKinney's recent history paints a far more positive picture: During the decades that McKinney has been incarcerated on the present offenses, he has not incurred a *single* disciplinary infraction. That fact is remarkable, given the ease with which a federal inmate can stumble into the ensnaring web of prison regulations. *See, e.g.*, 28 C.F.R. § 541.3 (2022) (forbidding the use of "abusive or obscene language," "circulating a petition," "smoking where prohibited," "being unsanitary or untidy," "loaning of property for profit," and so on). The Court can recall only a handful of defendants who have achieved similarly spotless records over the same span of time. McKinney, now approaching 60 years old, also appears to have turned a corner in prison. McKinney is heavily engaged in drug treatment, including as a mentor for fellow inmates. *See,*

10

*e.g.*, ECF No. 34-7 at 11, 15, 35, 40–42. Prison staff have praised McKinney's example to others, writing commendatory memoranda for his file. *See generally* ECF No. 34-8.

In sum, McKinney committed serious crimes, but not so serious as to merit the 46-year sentence that he received. And although the Court would ordinarily conclude that he should receive a sentence within the current Guidelines range, McKinney's post-conviction conduct has demonstrated extraordinary rehabilitation. As the Supreme Court recognized in *Concepcion*, federal judges have a responsibility "to sentence the whole person before them." 142 S. Ct. at 2398. The man before the Court is, by all accounts, far different today than he was in 2005. The Court's decision recognizes that change, and reduces McKinney's sentence accordingly.

### III. ORDER

**IT IS THEREFORE ORDERED** that the Motion to Reduce Sentence (ECF No. 34) is **GRANTED**. McKinney's term of imprisonment is **REDUCED TO 312 MONTHS**, a sentence that is sufficient, but not greater than necessary, to carry out the sentencing objectives of 18 U.S.C. § 3553(a).

**SO ORDERED**.

Signed: September 1, 2022

Graham C. Mullen
United States District Judge